ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **BELKIS E. MORA ANTONGIORGI**<br><br>Recurrido<br><br>v.<br><br>**NEGOCIADO DE SEGURIDAD DE EMPLEO (NSE)**<br><br>Recurrente | KLRA202400483 | **REVISIÓN** procedente del **Departamento del Trabajo y Recursos Humanos**<br><br>Apel. Núm.:<br>**PUA-07767-23**<br><br>Sobre: Inelegibilidad a los Beneficios del "Pandemic Unemployment Assistance" (PUA), "Coronavirus Aid, Relief, and Economic Security Act", Ley Pública 116-136 (CARES) del 27 de marzo de 2020 |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 31 de octubre de 2024.

Comparece ante nos, mediante *Recurso de Revisión de Decisión Administrativa* presentada el 30 de agosto de 2024, la señora Belkis E. Mora Antongiorgi (Sra. Mora o Recurrente). Mediante el recurso apelativo, la Sra. Mora nos solicita que revisemos la *Decisión del Secretario del Trabajo y Recursos Humanos de Puerto Rico* (*Decisión del Secretario*),[1] en la que el Secretario confirmó la determinación de inelegibilidad de la Recurrente a los beneficios del "*Pandemic Unemployment Assistance*" (PUA).

---

[1] Apéndice de *Recurso de Revisión de Decisión Administrativa*, Anejo VI, págs. 59-62. Notificada y archivada en autos el 27 de junio de 2024.

Número Identificador

SEN2024 _____

Por las razones que discutiremos a continuación, confirmamos la *Decisión del Secretario* de la que se recurre.

**I.**

El 13 de julio de 2021, la Oficina del Negociado de Seguridad de Empleo (NSE) le notificó a la Sra. Mora que era inelegible para recibir los beneficios del PUA. El PUA es un programa establecido por el "*Coronavirus Aid, Relief, and Economic Security Act*", Ley Pública 116-136 (Ley CARES) que, en general, le provee a los individuos que no son elegibles para recibir compensación de desempleo regular o beneficios extendidos, hasta un máximo de treinta y nueve (39) semanas de beneficios por desempleo. Carta Circular Núm. 2020-04, Departamento del Trabajo y Recursos Humanos, 15 de septiembre de 2020 (Carta Circular Núm. 2020-04). Ahora bien, los beneficios del PUA no están disponibles para todas las personas, por lo que la Carta Circular Núm. 2020-04 establece una serie de requisitos con los cuales un solicitante debe cumplir para recibir los beneficios.

La Sra. Mora apeló aquella determinación y el 8 de noviembre de 2023 la Decisión de Apelaciones de la Secretaría Auxiliar de Asuntos Legales y Normas celebró una vista telefónica. Así las cosas, el 11 de enero de 2024, el árbitro Ricardo Oxios Bulerín, confirmó la determinación del NSE.[2] Mediante una *Resolución*, el árbitro realizó las siguientes determinaciones de hechos:

1. La Sra. Mora declaró no haber trabajado en los años 2019 y 2020.[3]

---

[2] *Íd*., Anejo II, págs. 47-49. (El Apéndice fue presentado sin el beneficio de todas sus páginas. El 15 de octubre de 2024, mediante *Moción en Cumplimiento de Resolución*, la parte recurrente presentó las páginas que faltaban (TA-39, TA-43 y TA-49), las cuales se incorporan al Apéndice del recurso).
[3] *Íd*., pág. 48.

2. Entregó un registro de comerciante (0210676-0012), vigente desde el 19 de junio de 2019 hasta el 30 de junio de 2021 y desde el 1 de julio de 2021 hasta el 30 de junio de 2023.[4]

3. Presentó una planilla de contribución sobre ingresos del año 2019, en la que constó que trabajó por cuenta propia. Presentó un Anejo M en el que se reporta un ingreso neto de $30,000.00 y un Anejo K en el que se reporta un ingreso neto de ($29,632.00).[5]

4. Presentó la planilla del 2020 como trabajadora por cuenta propia. Se incluyó ningún Anejo M en el que se reporta un ingreso neto de ($756,000.00) y un Anejo K en el que se reporta un ingreso neto de ($57,022.00).[6]

En sus conclusiones de derecho, el árbitro concluyó que procede el pago de beneficios de desempleo parcial o total dispuestos en la Ley CARES si el solicitante cumple con unos requisitos monetarios y no monetarios.[7] En particular, señaló que en el caso de contratistas independientes, estos debieron presentar un registro de comerciante o Formulario 480.6SP en o antes del 2 de octubre de 2020 y evidencia de ingresos para el año 2019-2020.[8] No obstante, la Sra. Mora "aunque presentó un registro de comerciante que cumple con la Carta Circular Número 2020-04 [...], esta declaró no haber trabajado en los años 2019 y 2020. Luego se nos presentó evidencia contradiciendo lo alegado y [la Sra. Mora] aparenta haber estado trabajando".[9]

El 23 de enero de 2024, la Sra. Mora le envió un correo electrónico al Secretario del Trabajo de Puerto Rico, en la que informó su intención de apelar la *Resolución* del árbitro.[10] En el

---

[4] *Íd.*
[5] *Íd.*
[6] *Íd.*
[7] *Íd.*
[8] *Íd.*, pág. 49.
[9] *Íd.*
[10] *Íd.*, Anejo III, págs. 50-51.

correo electrónico remitido al Secretario del Trabajo, la Sra. Mora se sostuvo en que no trabajó en los años 2019 y 2020 debido a los cambios a su vida profesional y personal suscitados por la pandemia de COVID-19[11] y que el árbitro erróneamente concluyó que la Sra. Mora tuvo un ingreso de $756,000.00 cuando lo reportado en su planilla de 2020, Anejo M, fue de $756.00.[12] En el trámite de la apelación ante el Secretario, la agencia le solicitó a la Sra. Mora que presentase una serie de documentos para poder resolver la controversia. Así las cosas, el 29 de mayo de 2024, se celebró una audiencia en la que la jueza administradora le concedió hasta el 7 de junio de 2024 para presentar los documentos solicitados.[13] El 6 de junio de 2024, la Sra. Mora informó que no podría presentar todos los documentos solicitados para el 7 de junio de 2024, por lo que se le concedió una prórroga hasta el 14 de junio de 2024.[14] Llegado el 14 de junio de 2024, la Sra. Mora presentó los documentos solicitados, con excepción a las planillas corporativas 2019-2020.[15] En consecuencia, el 25 de junio de 2024, el Secretario confirmó al árbitro, reconociendo que la Sra. Mora había sometido parte de los documentos solicitados y que, al momento de emitirse la *Decisión del Secretario*, la agencia no había recibido documentos adicionales.[16]

Inconforme con aquella determinación, el 30 de agosto de 2024, la Sra. Mora presentó el recurso apelativo ante nuestra consideración. Como único señalamiento de error, alegó que:

> **ERRÓ MANIFIESTAMENTE EL SECRETARIO DEL TRABAJO Y RECURSOS HUMANOS DE PUERTO RICO POR CONDUCTO DE SU DIVISIÓN DE APELACIONES AL CONFIRMAR LA DETERMINACIÓN DE INELEGIBILIDAD A LOS BENEFICIOS DEL PUA A LA SRA. MORA COMO CUENTAPROPISTA EMITIDA POR EL NEGOCIADO**

---

[11] *Íd.*, pág. 50.
[12] *Íd.*; Véase además Anejo I, pág. 38.
[13] *Íd.*, Anejo V, pág. 54.
[14] *Íd.*
[15] *Íd.*, pág. 57.
[16] *Íd.*, Anejo VI, pág. 61.

**DE SEGURIDAD DE EMPLEO CONTRARIO A LA REGLAMENTACIÓN FEDERAL APLICABLE.**

El 5 de septiembre de 2024, este Tribunal emitió una *Resolución* concediéndole a la parte recurrida treinta (30) días para presentar su alegato en oposición al recurso de la Sra. Mora. Habiendo transcurrido aquel término sin la comparecencia de la parte recurrida, procedemos a resolver.

**II.**

**A.**

El Artículo 4.006 (c) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, (4 LPRA sec. 24y (c)) y la Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, (3 LPRA sec. 9672) (LPAU), facultan al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Los organismos administrativos merecen la mayor deferencia judicial, puesto que estos tienen el conocimiento especializado sobre los asuntos que les han sido delegados. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012). Al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Íd.* Todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo cual la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd.*

Las facultades adjudicativas de una agencia están regidas por la LPAU, *supra*, y por la jurisprudencia aplicable. La Sección 3.1 de la LPAU, *Íd.*, requiere que las agencias fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y, además, deben describir

tanto los hechos probados como los rechazados. *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 265 (2007). Por lo tanto, la facultad revisora de los tribunales está limitada a determinar: (1) que el remedio concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. LPAU, *supra*, Sección 4.5.

Sobre nuestra facultad revisora, el Tribunal Supremo ha expresado que:

> **[L]as determinaciones de hecho se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo**. Mientras, la deferencia antes mencionada **no se extiende de manera automática a las conclusiones de derecho** emitidas por la agencia, ya que estas serán revisables en todos sus aspectos por el tribunal. **Esto es, que el tribunal las puede revisar sin sujeción a norma o criterio alguno**.
>
> *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115. (citas omitidas) (Énfasis nuestro).

"[L]os foros apelativos debemos diferenciar entre asuntos de interpretación estatutaria, en la que los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa". *Íd.*, pág. 116. Entre las determinaciones de hechos y las conclusiones de derechos, los tribunales les deben menor deferencia a las conclusiones de derecho de las agencias. *Íd.*, pág. 115. Aun así, la interpretación judicial del derecho no constituye una sustitución automática de las conclusiones de derechos de una agencia. *Íd*. En otras palabras, la deferencia disminuida no trata de una revisión *de novo*. El criterio administrativo solo debe ser descartado cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

**B.**

La Ley CARES, *supra*, es una legislación económica federal, creada en respuesta a la emergencia causada por el COVID-19, a fines de mitigar el impacto económico que la pandemia tuvo sobre los empleados, familias y comercios. La Sección 2102 de la referida Ley creó el programa PUA, que dispone que:

> Sujeto a la subsección (c), el Secretario proporcionará a cualquier **individuo cubierto** la asistencia por beneficios de desempleo mientras dicho individuo esté desempleado, parcialmente desempleado o no pueda trabajar por las semanas de dicho desempleo, con respecto a las semanas cuales el individuo no tenga derecho a ninguna otra compensación por desempleo (según se define ese término en la Sección 85(b) del Título 26 del Código de los Estados Unidos) o crédito por período de espera.
>
> *Íd.*, Sección 2102(b). (Traducción nuestra).

Por lo tanto, los individuos cubiertos, según definidos por la Sección 2102(a)(3) de la Ley CARES, podrán recibir asistencia bajo el programa si cumplen con los requisitos federales para los mismos. Un individuo cubierto ("*covered individual*") es:

(3) COVERED INDIVIDUAL. —The term "covered individual"—

(A) means an individual who—

(i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 2107, including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 2107; and

(ii) provides self-certification that the individual—

(I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because—

(aa) the individual has been diagnosed with COVID–19 or is experiencing symptoms of COVID–19 and seeking a medical diagnosis;

(bb) a member of the individual's household has been diagnosed with COVID–19;

(cc) the individual is providing care for a family member or a member of the individual's

household who has been diagnosed with COVID–19;

(dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID–19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID–19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID–19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID–19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID–19;

(ii) the individual has to quit his or her job as a direct result of COVID–19;

(jj) the individual's place of employment is closed as a direct result of the COVID–19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section; or

(II) is self-employed, is seeking part-time employment, does not have sufficient work history, or otherwise would not qualify for regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 2107 and meets the requirements of subclause (I); and

(B) does not include—

(i) an individual who has the ability to telework with pay; or

(ii) an individual who is receiving paid sick leave or other paid leave benefits, regardless of whether the individual meets a qualification described in items (aa) through (kk) of subparagraph (A)(i)(I).

*Íd.*, Sección 2102(a)(3).

A su vez, el Gobierno federal ha reconocido que el programa PUA puede ser objeto de abuso y fraude. En aras de combatir el fraude en el programa PUA, el Departamento del Trabajo federal (DOL) ha enfatizado el papel fiscalizador que deben protagonizar los estados sobre el manejo del programa. Con el propósito de mantener la integridad del programa de desempleo y atajar el posible fraude en programas federales de asistencia económica, el 11 de mayo de 2020, el DOL emitió el *"Unemployment Insurance Program Letter"* (UIPL), No. 23-20. Mediante el pronunciamiento, se orientó a los estados y territorios estadounidenses sobre las funciones requeridas para implementar el PUA de forma íntegra, entre otros programas de ayuda económica contemplados en la Ley CARES.

En Puerto Rico, el Departamento del Trabajo y Recursos Humanos (DTRH) es la agencia designada para administrar el programa PUA. Por lo tanto, el 15 de septiembre de 2020, emitió la Carta Circular Núm. 2020-04, *supra*, a fines de establecer y dar a conocer las normas aplicables para que trabajadores a cuenta propia sean elegibles a recibir los beneficios del PUA. En particular, la Carta Circular Núm. 2020-04 requiere que todo solicitante del programa PUA que se identifique como contratista independiente o cuentapropista someta un Certificado de Registro de Comerciante (Modelo SC 2918) vigente. *Íd.*, pág. 3. Más aún, dispone que aquellos cuentapropistas que no consten en el Registro de Comerciantes antes del 2 de octubre de 2020 "no serán elegibles para PUA ni para reclamar semanas subsiguientes de desempleo, incluyendo aquellos individuos que interesen reclamar semanas anteriores a dicha fecha". *Íd.*

Conjuntamente, conforme a la Ley CARES y Carta Circular Núm. 2020-04, para ser elegible para el programa PUA, los

solicitantes deben someter las planillas relevantes y presentar un Certificado de Registro de Comerciante emitido antes del 2 de octubre de 2020.

**III.**

En su *Recurso de Revisión de Decisión Administrativa*, la Sra. Mora nos ha pedido que revoquemos la *Decisión del Secretario*. Alegó en su escrito apelativo que el Secretario erró al confirmar la *Resolución* del árbitro, pese entender que la Sra. Mora había cumplido con todos los requisitos de la Ley CARES para ser elegible para los beneficios del PUA.

Tras una evaluación completa del expediente administrativo y de los argumentos de la parte recurrente, es forzoso concluir que no se cometió el error señalado por la Sra. Mora. En primer lugar, debemos recordar que nuestra facultad revisora está limitada por la jurisprudencia aplicable y las disposiciones de la LPAU, *supra.* En particular, los foros judiciales le deben deferencia a las determinaciones de las agencias y organismos administrativos, que cuentan con el *expertise* sobre los asuntos que le han sido delegados por la Asamblea Legislativa. En consecuencia, la facultad revisora de los tribunales está limitada a determinar: (1) que el remedio concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta.

Cabe señalar que el DTRH cometió un error al determinar que el anejo M de la planilla de 2020 que presentó la Sra. Mora reflejaba un ingreso de $756,000.00. Una revisión sencilla del expediente demuestra que dicha cantidad era de $756.00. No obstante, surge con claridad que la denegación del beneficio del PUA no se debió a aquel error clerical, sino al incumplimiento de la Sra. Mora con los

requerimientos del Secretario del Trabajo y las incongruencias entre lo que ella alegó y la realidad reflejada en sus planillas.

En varias ocasiones, la Sra. Mora declaró que no trabajó en el 2019 y 2020 y se reafirmó en dicha aseveración.[17] No obstante, y contrario a lo que aseveró, sus planillas reflejan que sí generó ingresos en aquellos años. En el proceso apelativo administrativo, surge que la Sra. Mora no presentó la prueba o razones para explicar la discrepancia. Esto pese que el Secretario le brindó una oportunidad para presentar los documentos solicitados antes de emitir su *Decisión* el 25 de junio de 2024.

Ante estos hechos, consideramos que la determinación administrativa fue una razonable y fundamentada en el expediente administrativo. No hay error craso o manifiesto de derecho, ni indicios de parcialidad o prejuicio en el razonamiento del foro administrativo. Por lo tanto, confirmamos la determinación de la cual se recurre.

**IV.**

Por los fundamentos discutidos, confirmamos la *Decisión del Secretario.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[17] *Íd*., Anejo III, pág. 50.